UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA CAROL RUGGIERS, | ) | CIVIL ACTION NO. 4:19-CV-1633 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL, | ) | |
| *Commissioner of Social Security* | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Linda Carol Ruggiers, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.     BACKGROUND & PROCEDURAL HISTORY

On January 19, 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 16; Doc. 8-2, p. 17).  In this application, Plaintiff alleged she became disabled as of May 15, 2014, when she was forty-four years old, due to the following conditions: spinal stenosis at L4, L5, and L6; degenerative disc disease; arthritis; constant and severe bilateral leg pain; severe back pain; anxiety due to pain; high blood pressure. (Admin. Tr. 183; Doc. 8-6, p. 40). Plaintiff alleges that the combination of these conditions affects her ability to lift; squat; bend; stand; walk; sit; kneel; climb stairs; and complete tasks. (Admin. Tr. 165; Doc. 8-6, p. 22). Plaintiff has a "limited" education (equivalent to a seventh through eleventh grade level) and can communicate in English. (Admin. Tr. 26; Doc. 8-2, p. 27). Before the onset of her impairments, Plaintiff worked as a nurse's aide. *Id*.

On April 25, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 16; Doc. 8-2, p. 17). On May 11, 2016, Plaintiff requested an administrative hearing. *Id*.

On February 15, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). *Id*. On June 27, 2018, the ALJ issued a decision denying Plaintiff's

application for benefits. (Admin. Tr. 27; Doc. 8-2, p. 28). On September 25, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 122; Doc. 8-4, p. 28).

On July 26, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 8-2, p. 2).

On September 20, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court "remand this matter to the Administrative Law Judge with directions to place appropriate weight on the opinions of the treating physicians over that of doctors who have not seen the Plaintiff, not treated the Plaintiff and only review a portion of the medical records". *Id.*

On December 6, 2019, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 7, ¶ 8). Along with her

Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 11) and the Commissioner's Brief (Doc. 12) have been filed. Plaintiff did not file a reply. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
      SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 27, 2018.

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are

consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

In her brief, Plaintiff raises the following arguments:

(1)   Whether the Administrative Law Judge in this case had the opportunity to review the complete operative report pertaining to the back surgery in 2017;

(2)   Whether the Administrative Law Judge in this case failed to consider the actual medical evidence of the Plaintiff's treating physician over the opinion of a non-treating physician.

(Doc. 11, p. 3).

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her July 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2020. (Admin. Tr. 18; Doc. 8-2, p. 19). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 15, 2014 (Plaintiff's alleged onset date) and July 27, 2018 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 18; Doc. 8-2, p. 19). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): history of obesity; status post gastric bypass procedures; lumbar degenerative disc disease; status post fusion. (Admin. Tr. 19; Doc. 8-2, p. 20). Also at step two, the ALJ found that Plaintiff had the following medically determinable non-severe impairments: contact dermatitis; allergic rhinitis; sinusitis; tension headaches; skin lesions; dysfunctional uterine bleeding; hyperglycemia; left adnexal mass; gastric ulcer; granuloma annulare; gastroesophageal reflux disease; hypertension; nasopharyngitis; vitamin B12 deficiency; anxiety; and depression. *Id.* The ALJ noted that Plaintiff had been diagnosed with fibromyalgia in 2017 but concluded that this

Page 9 of 37

impairment was not medically determinable. (Admin. Tr. 19; Doc. 8-2, p. 21). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 21; Doc. 8-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except that:

> she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, crouch, crawl, kneel, and climb ramps and stairs. She must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and vibration.

(Admin. Tr. 21-22; Doc. 8-2, pp. 22-23).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 26; Doc. 8-2, P. 27). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id*. To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: folder (DOT #369.687-018); office helper (DOT #211.462-010); and cashier (DOT #211.462-010). (Admin. Tr. 27; Doc. 8-2, p. 28).

B.    WHETHER THE ALJ ADEQUATELY EVALUATED PLAINTIFF'S BACK
      IMPAIRMENT

Plaintiff argues that the ALJ did not adequately address the report from

Plaintiff's February 2016, back surgery. Her argument in this regard is two-fold.

First, Plaintiff argues that the ALJ failed to address the operate report. Second,

Plaintiff argues that this error resulted in harm because that operative report proves

that Plaintiff meets Listing 1.04A. I will address each of these arguments separately

below.

1.    Whether the ALJ Adequately Considered the Evidence Relating
      to Plaintiff's February 2017 Spinal Surgery

On February 16, 2017 Plaintiff had spinal surgery. Although the ALJ did not

address the operative report in any detail, she addressed the records related to

Plaintiff's orthopedic problems after her surgery as follows:

> On February 16, 2017, she underwent spinal surgery for repair of discs
> and removal of a cyst. The claimant followed up at pain management
> more than a month after surgery and reported constant pain symptoms
> in her left hip, groin, and left lower extremity; she reported pain
> symptoms were alleviated with heat and some walking; the record
> indicates that the claimant began jogging after losing weight. An
> injection was administered in the claimant's left knee in April 2017,
> and she reported fifty percent sustained pain relief the following month.
> In May 2017, lumbar injections continued and she was referred to
> physical therapy with symptoms of left knee pain. The following
> month, she reported increased symptoms of low back pain when she
> followed up for physical therapy. She displayed some antalgic gait and
> decreased stance time left lower extremity. By June 2017, she reported
> improved knee pain symptoms with continued injections and physical

therapy. The claimant subsequently fell while on vacation and she reported associated pain symptoms when she returned to physical therapy in July 2017. Her knee pain symptoms improved significantly with a cortisone injections and she progressed to strengthening her left knee; she was eventually discharged from physical therapy on July 21, 2017. She returned to physical therapy on August 7, 2017, with symptoms of low back pain. There was tenderness to palpation of the claimant's spine and hypertonicity in the left lumbar paraspinals and quadratus lumborum. She was diagnosed with lumbar radiculopathy. The claimant received sacroiliac injections in August 2017 and she returned to therapy on more than five occasions throughout August 2017. She followed up at Pain Management in September 2017, and reported constant aching in her sacroiliac joints, worse on the left. On examination there was tenderness in the claimant's lumbar spine; there was pain with motion, but active range of motion in the claimant's lumbar spine was normal; seated straight leg raising was positive on the left. The claimant subsequently used some steroids and her pain symptoms improved. She was discharged from physical therapy on September 29, 2017 (Exhibits 15F, 16F, 17F).

The claimant followed up with her primary care provider on October 27, 2017, and reported symptoms of back stiffness and weakness in his [sic] legs as well as muscle aches, pain, paresthesia, spasms, and limited movement.

(Admin. Tr. 24-25; Doc. 8-2, pp. 25-26).

Plaintiff argues:

The decision of the Administrative Law Judge below had previously mentioned that the Plaintiff had spinal surgery for repair of disc and removal of a cyst on February 16, 2017, and further inferred from the review of very few records after that date that the surgery alleviated the Plaintiff's back problems.

However, the review of the operative report in this case would indicate that the Plaintiff had the following procedures:

a) L4 and L5 laminectomies and a left L5 facetectomy;
b) Segmental pedicle screw instrumentation—bilateral L3, L4, L5 and S1 With a K2M Everest Pedicle screw;
c) Post unilateral fusion L3 to S1 bilateral with infused BMP on a collagen sponge, tri-calcium phosphate, local bone, bone putty and bone marrow aspirate;
d) Right iliac bone marrow aspiration, stem cell concentration with Arteriocyte system and application of bone graph.

This was a very extreme procedure and is indicative of the severe back issues the Plaintiff had pre-operatively.

In fact, the review of the entire record in this case will show that although initially reporting some improvement, the Plaintiff was eventually back to the point of being as limited as she was before the surgery.

A note of the Family Practice center dated September 21, 2017, reported chronic pain and the fact that Plaintiff was continuing to follow up with ortho and pain management (she had previously been treating at pain management every other week for injections and pain medication, however, she had no improvement, but admitted the pain was stable at the present time with the injections and pain medication). Plaintiff further reported limitations of movement, muscle aches, myalgia, pain, paresthesia, spasms, back stiffness and other musculoskeletal symptoms. From a neurological point of review, the Plaintiff reported back stiffness, bilateral leg stiffness and weakness of the legs.

Those same complaints continued on October 27, 2017, and an office note from Family Practice Center dated August 3, 2017, indicated that the Plaintiff was experiencing notable increase in pain along with swelling and discomfort of her left knee requiring the Plaintiff to undergo three Synvisc injections through orthopedics.

In an office note dated June 8, 2017, the Plaintiff noted constant moderate to severe pain pointing directly to the lumbosacral regions

stating that the pain radiates worse to her left sacroiliac joint region and in to the left lower extremity.

An office note of May 11, 2017, indicated general weakness, fatigue, malaise, lethargy and trouble sleeping with headaches, dizziness and lightheadedness with musculoskeletal complaints of muscle pain, joint pain, stiffness, backache, tenderness and limitations of motion and neurological complaints of weakness, numbness or loss of sensation and tingling.

All these post-surgical symptoms were not acknowledged or considered by the Administrative Law Judge below and not considered to support the ongoing disability status.

The Plaintiff also followed up with Haven Pain Management and had continuing complaints of spine pain as verified by previous Exhibits 15F, 16F and 17F, continuing with ongoing injections and physical therapy after the February 16, 2017, surgery.

(Doc. 11, pp. 4-6).

In response, the Commissioner argues:

The ALJ adequately considered the evidence post-dating Plaintiff's February 2017 back surgery. As the ALJ discussed, the evidence after her surgery showed that throughout 2017, Plaintiff reported ongoing pain symptoms that were alleviated with heat and some walking, received knee and lumbar injections, attended physical therapy, which helped with her knee pain, and she was discharged from physical therapy in September 2017 (Tr. 24-25, 979-1064, 1065-1150, 1220-1351). The ALJ also noted that Plaintiff reported pain after "cleaning her mother's bathroom for 2 hours" in June 2017 (Tr. 25, 1007) (further noting that she was "feeling pretty good today"). The ALJ specifically cited the exhibits generated subsequent to Plaintiff's lumbar surgery in evaluating the evidence of record (Tr. 24-25, citing Exhibits 15F, 16F, 17F, 18F, and 19F).

Significantly, the ALJ did not find that Plaintiff had no limitations. Rather, the ALJ included significant limitations in the RFC assessment

Page 14 of 37

(Tr. 21-22, 24-25). Disability is not determined merely by the presence of impairments. Rather, the relevant inquiry is what functional limitations are caused by the impairments and whether those limitations, taken together, preclude the ability to perform all work. *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991). And, the fact that Plaintiff continued to experience pain after her back surgery does not, alone, demonstrate that she could not perform the work as identified in the RFC. It is well-settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled. *Id.* at 129. Indeed, that a person cannot work without some pain does not, itself, satisfy the test for disability. *See Sherrod v. Barnhart*, 2002 WL 32350551, at *9 (E.D. Pa. Jul. 31, 2002) (citing *Cancel v. Harris*, 512 F. Supp. 69 (E.D. Pa. 1981)). Rather, "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

Significantly, Plaintiff's argument identifies no functional limitations established in the post-surgical record that are not already accounted for in the RFC assessment, nor does Plaintiff point to any medical opinion assessing more restrictive limitations (ECF No. 11 at 4- 6). This undeveloped argument is insufficient to satisfy her burden on appeal. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an [alleged] error is harmful normally falls upon the party attacking the agency's determination."); *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987) (Plaintiff carries both the burden of production and proof through step four).

(Doc. 12, pp. 8-10).

Plaintiff argues remand is required because the ALJ did not discuss five treatment records (approximately fifteen pages) contained in the almost 1,400-page administrative record. Plaintiff identified these records by date only and did not provide a page-cite so these records could be easily located for review. After

reviewing the record, it appears that the treatment notes Plaintiff references in her argument are as follows: May 11, 2017 examination (Admin. Tr. 1241-1243; Doc. 8-23, pp. 23-25); June 8, 2017 treatment note (Admin. Tr. 1235-1237; Doc. 8-23, pp. 17-19); August 3, 2017 treatment note (Admin. Tr. 1229-1231; Doc. 8-23, pp. 11-13); September 21, 2017 treatment note, (Admin. Tr. 1220-1222; Doc. 8-23, pp. 2-4); October 27, 2017 treatment note (Admin. Tr. 1223-1225; Doc. 8-23, pp. 5-7).

On May 11, 2017, Plaintiff was examined by Certified Physicians Assistant Jeremy Lazorka ("PA-C Lazorka"). Although Plaintiff contends that this note establishes that Plaintiff experienced "general weakness, fatigue, malaise, lethargy and trouble sleeping with headaches, dizziness and lightheadedness with musculoskeletal complaints of muscle pain, joint pain, stiffness, backache, tenderness and limitations of motion and neurological complaints of weakness, numbness or loss of sensation and tingling." Portions of this note are illegible due to the poor quality of the copy provided to the Court, and therefore I cannot confirm that this record includes those observations. I note, however, that similar language appears in other records from this provider. PA-C Lazorka noted that Plaintiff complained of:

> constant moderate to severe pain pointing directly to the lumbosacral region stating that the pain radiates worse to her left sacroiliac joint region into the left lower extremity. She has no loss of bowel or bladder function is currently being treated and evaluated with pain management

receiving injections. She has also established with Orthopedics therefore, I recommend that she discuss corticosteroid injection over the left greater trochanter and other treatment options however, I advised she partake in conservative treatment with stretching and exercising. Vital signs are stable except for elevated blood pressure today. Spent quite a bit of time reviewing her past medical history in fact about 1 hour was spent discussing her concerns medical problems. We will obtain records from past provider as we do not have them on file we only have recent pain management no[w]. She has a difficult time sleeping at night based off the fact she is experiencing moderate to severe low back pain and lower extremity joint pain which has led to an increase in daytime fatigue. We will not make any changes or adjustments were [sic] medications that are rather we will wait until lab results returned when she follows up at her next office visit. No other concerns today.

(Admin. Tr. 1241, Doc. 8-23, p. 23). On physical examination PA-C Lazorka observed:

> MUSCULOSKELETAL: normal muscle tone/bulk, no deformities, normal range of motion, normal spine alignment NEUROLOGICAL; muscle strength 5/5 in all major muscle groups, cranial nerves II-XII intact, rapid alternating movements intact, point-to-point movements intact, pain/tenderness/light touch/vibration/discrimination intact. DTRs intact EXTREMITIES: no varicose veins, no edema, no abnormal movements, no tremor, no rigidity, normal alignment, normal gait.

(Admin. Tr. 1242; Doc. 8-23, p. 24). Although this record does contain statements by Plaintiff about her *symptoms*, it does not discuss any specific functional limitation. Moreover, despite the symptoms alleged by Plaintiff during this examination, objective findings by PA-C Lazorka are not consistent with those allegations. Furthermore, Plaintiff has not explained why further consideration of

this record could possibly result in a different outcome in this case. Accordingly, I am not persuaded that remand is required for further consideration of this treatment note.

On June 8, 2017, Plaintiff was examined by PA-C Lazorka. Plaintiff alleges that this treatment note shows that she alleged "constant moderate to severe pain pointing directly to the lumbosacral regions stating that the pain radiates worse to her left sacroiliac joint region and in to the left lower extremity." Under the "History of Present Illness section of the treatment note—documenting Plaintiff's statements about her own symptoms—it appears that Plaintiff made the statement quoted in the brief. However, I note that the quoted language is almost entirely illegible in the copy provided to the Court. (Admin. Tr. 1235; Doc. 8-23, p. 17). However, I note that similar language appears in other treatment notes from this provider. On physical examination PA-C Lazorka observed:

> MUSCULOSKELETAL: normal muscle tone/bulk, no deformities, normal range of motion, normal spine alignment NEUROLOGICAL: muscle strength 5/5 in all major muscle groups, cranial nerves II-XII intact, rapid alternating movements intact, point-to-point movements intact, pain/temperature/light touch/vibration/discrimination intact, DTRs intact EXTREMITIES: no varicose veins, no edema, no abnormal movements, no tremor, no rigidity, normal alignment, normal gait.

(Admin. Tr. 1236; Doc. 8-23, p. 18). Although this record does contain statements by Plaintiff about her *symptoms*, it does not discuss any specific functional

limitation. Moreover, despite the symptoms alleged by Plaintiff during this examination, objective findings by PA-C Lazorka are not consistent with those allegations. Furthermore, Plaintiff has not explained why further consideration of this record could possibly result in a different outcome in this case. Accordingly, I am not persuaded that remand is required for further consideration of this treatment note.

On August 3, 2017, Plaintiff was examined by PA-C Lazorka. Plaintiff argues that, at that examination she "was experiencing notable increase in pain along with swelling and discomfort of her left knee requiring the Plaintiff to undergo three Synvisc injections through orthopedics." PA-C Lazorka noted that:

> She states that her left knee was feeling fairly well up until about a week ago when she was walking on the boardwalk in Ocean City Maryland and tripped over 1 of the ports suffering a fall injury to her left side of her body. States she fell directly onto her left knew hip [illegible text]. She has [illegible text] excoriations over left elbow that seemed to be healing. She also has a large bruise over the left greater trochanter with that seems to be improving as well. She does state that she is [illegible text] increase in pain along with swelling and discomfort of her left knee. While she did feel this since his congestions [sic] due to the fact she suffered a recent injury I feel it appropriate that we can administer corticosteroid injection as she is specifically requesting this. She is also aware that she is to continue conservative treatment will follow up with Orthopedic surgery as scheduled. She has significant past medical history of cervical disc disease, obesity status post gastric bypass surgery, chronic lumbosacral degenerative disc disease status post fusion of L3 through L5 just in February of this year. She also has current history of bursitis of the left greater trochanter along with osteoarthritis of the knee. She has strong family history of coronary

artery disease and cerebral vascular accident and is currently not on statin therapy and blood pressure medication. Planes [sic] of constant moderate to severe pain pointing directly to the lumbosacral region stating that the pain radiates worse to her left sacroiliac joint region into the left lower extremity. She has no loss of bowel or bladder function is currently being treat and evaluated with pain management receiving injections. She [illegible text] I recommend that she discuss corticosteroid injection over the left greater trochanter and other treatment options however; I advised that she partake in conservative treatment with stretching and exercising. Vital signs are stable. 1 hour was spent discussing all her concerns medical problems. We will obtain records from past provider as we do not have them on file we only have recent pain management no. She has a difficult time sleeping at night based off the fact that she is experiencing moderate to severe low back pain and lower extremity muscle and joint pain which has led to an increase in daytime fatigue. I do feel it appropriate that after discussing lab results and hearing patient's current complaint that we make adjustments in her medication regimen as updated prescribed her medication sheet. She will follow up here our office and notify us if she has any adverse effects or side effects from the medication.

(Admin. Tr. 1229; Doc. 8-23, p. 11). In her review of symptoms, Plaintiff reported

leg cramps, muscle pain, joint pain, stiffness, backache, tenderness, limitation of

motion, weakness, numbness/loss of sensation, and tingling. (Admin. Tr. 1230; Doc.

8-23, p. 12). On physical examination, PA-C Lazorka observed:

MUSCULOSKELETAL: normal muscle tone/bulk, no deformities, normal range of motion, normal spine alignment NEUROLOGICAL: muscle strength 5/5 in all major muscle groups, cranial nerves II-XII intact, rapid alternating movements intact, point-to-point movements intact, pain/temperature/light touch/vibration/discrimination intact, DTRs intact EXTREMITIES: no varicose veins, no edema, no abnormal movements, no tremor, no rigidity, normal alignment, normal gait.

*Id.* Although this record does contain statements by Plaintiff about her *symptoms*, it does not discuss any specific functional limitation. Moreover, despite the symptoms alleged by Plaintiff during this examination, objective findings by PA-C Lazorka are not consistent with those allegations. Furthermore, Plaintiff has not explained why further consideration of this record could possibly result in a different outcome in this case. Accordingly, I am not persuaded that remand is required for further consideration of this treatment note.

On September 21, 2017, Plaintiff was examined by PA-C Lazorka for "follow up on chronic pain, GERD, Anemia, Fibromyalgia, Depression, HTN." (Admin. Tr. 1220; Doc. 8-23, p. 2). During that examination Plaintiff reported symptoms of "limitations of movement, muscle aches, myalgia, pain, paresthesia, spasms, back stiffness," "bilateral leg stiffness and weakness of the legs." *Id.* On examination, PA-C Lazorka did not note any musculoskeletal abnormalities. (Admin. Tr. 1221; Doc. 8-23, p. 3). Although this record does contain statements by Plaintiff about her *symptoms*, it does not discuss any specific functional limitation. Moreover, despite the symptoms alleged by Plaintiff during this examination, objective findings by PA-C Lazorka are not consistent with those allegations. Furthermore, Plaintiff has not explained why further consideration of this record could possibly result in a different

outcome in this case. Accordingly, I am not persuaded that remand is required for further consideration of this treatment note.

On October 27, 2017, Plaintiff was examined by PA-C Lazorka for "follow up on chronic pain, GERD, Anemia, Fibromyalgia, Depression and HTN." (Admin. Tr. 1223; Doc. 8-23, p. 5). During that examination Plaintiff reported symptoms of "limitations of movement, muscle aches, myalgia, pain, paresthesia, spasms, back stiffness," "bilateral leg stiffness and weakness of the legs." *Id.* On examination, PA-C Lazorka did not note any musculoskeletal abnormalities. (Admin. Tr. 1224; Doc. 8-23, p. 6). Although this record does contain statements by Plaintiff about her *symptoms*, it does not discuss any specific functional limitation. Moreover, despite the symptoms alleged by Plaintiff during this examination, objective findings by PA-C Lazorka are not consistent with those allegations. Furthermore, Plaintiff has not explained why further consideration of this record could possibly result in a different outcome in this case. In short, these office visits with PA-C Lazorka document continued pain and discomfort, but no functional limitations. Accordingly, I am not persuaded that remand is required for further consideration of this treatment note.

      2.     Whether the ALJ Erred When She Concluded that Plaintiff did not meet Listing 1.04(A)

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("listing of impairments"), describes, for each major body system, the severity of impairment that is severe

enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education or work experience. 20 C.F.R. § 404.1525(a). At step three of the sequential evaluation process, the ALJ considers whether the combination of the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant has an impairment that meets the twelve-month duration requirement and meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The argument raised in this particular case implicates Listing 1.04A. To meet this listing a claimant must be diagnosed with a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture) that results in "compromise of a nerve root" or compromise of the spinal cord, with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04A.

In an acquiescence ruling, the Social Security Administration explained its policy on meeting the severity requirements of Listing 1.04A as follows:

> Our policy is that listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present: (1) Neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). Listing 1.04A uses the conjunction "and" when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination. When this set of criteria is present on examination, the individual has the clinical presentation we expect from a person who suffers from nerve root compression that is so severe that it would preclude any gainful activity. 20 CFR 404.1525(a), 416.925(a).

> On the other hand, when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A. An individual who shows only some of the criteria on examination presents a different, less severe clinical picture than someone with the full set of criteria present simultaneously. To meet the severity required by the listing, our policy requires the simultaneous presence of all of the medical criteria in listing 1.04A.

AR 15-1(4), 2015 WL 5697481 at *3.

At step three of her decision, the ALJ found that Plaintiff did not meet the severity of any impairment described in the listing of impairments. (Admin. Tr. 21; Doc. 8-2, p. 22). In support of this finding, the ALJ explained:

> The listing of impairments found in 20 CFR have been reviewed; specifically Listings 1.02 involving major dysfunction of a joint and 1.04 involving disorders of the spine, both under musculoskeletal impairments. Upon review of the entire record, the undersigned finds no evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of

the affected joint, resulting in an inability to ambulate effectively, which would be required to satisfy the listing 1.02. *The undersigned finds no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, which would be required to satisfy listing 1.04. Additionally, the undersigned also found no evidence of limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) within a 12-month period (AR 15-1).*

(Admin. Tr. 21; Doc. 8-2, p. 22) (emphasis added).

Plaintiff argues:

The Administrative Law Judge below failed to consider Listing 1.04(A) which the attorney for the Plaintiff advanced as qualifying the Plaintiff for disability both before and after the surgical procedure.

The pain management records of 2016 document the necessary elements of Listing 1.04(a), see page 8 of 87 and page 65 of 87 which are pre and post-surgical system reviews by the pain management doctor and are part of Exhibit 16F.

The ongoing diagnosis by the pain management doctor and the primary care physician both include post-surgical diagnosis including osteoarthritis of the hip, knee joint pain on movement, lumbosacral spondylosis without myelopathy, prolapsed lumbar intervertebral disc with sciatia [sic], degeneration of the lumbar intervertebral disc, spinal stenosis of the lumbar region, lumbosacral radiculitis, backache with pain in the hips and legs and disorder of the back. These problems were set forth on page 24 of Exhibit 18F.

These problems are set forth on Page 24 of Exhibit 18F.

The Administrative Law Judge failed to articulate the extensive nature of the back surgery the Claimant had and the fact that she was soon

limited to the same extent post-surgical as she was prior to the surgery in question.

(Doc. 11, pp. 4-7).

In response, the Commissioner argues:

Furthermore, although Plaintiff alleges that the ALJ inadequately considered whether her impairments satisfied Listing 1.04A, and that "[t]he pain management records of 2016 document the necessary elements of Listing 1.04(A)," (ECF No. 11 at 6), Plaintiff does not identify the criteria of Listing 1.04A or explain how the evidence might show that her impairments satisfied the medical criteria and duration requirement of the listing. The listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they are deemed disabled regardless of their vocational background. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). The medical criteria defining the listed impairments are appropriately set at a higher level than the statutory standard for disability. *Zebley*, 493 U.S. at 528-32. To be found presumptively disabled, it is the claimant's burden to show that all of the criteria for a listing have been met. 20 C.F.R. §§ 404.1512(a) (stating that a claimant bears the burden of providing sufficient evidence to establish entitlement to disability), 404.1525(c)(3); *Zebley*, 493 U.S. at 530; *Yuckert*, 482 U.S. at 146 n.5. See also 20 C.F.R. § 404.1509 (providing that to be disabling, an impairment must be expected to last twelve continuous months in duration). Because Plaintiff has not met her burden to demonstrate that the evidence from the relevant period established all of the criteria of Listing 1.04A, including the durational requirement, her claim that the ALJ's step three finding is not supported by substantial evidence must be rejected. *See Sanders*, 556 U.S. at 409 (2009); *Blosser v. Colvin*, No. 4:14-CV-1308, 2015 WL 4410084, at *8 (M.D. Pa. July 20, 2015) (finding no error where "the record does not establish that Plaintiff has met all of the necessary criteria" of Listing 1.04 and "Plaintiff himself . . . does not address whether he meets all of the criteria of Listing 1.04A."); *McConnell v. Astrue*, Civ. A. No. 09-44, 2010 WL 2925053, at *5 (W.D. Pa. July 20, 2010) ("McConnell makes no attempt to

explain the precise basis for his belief that his impairments equaled Listings 12.04 and 12.06. . . . He makes no direct reference to the specific criteria enumerated in Listings 12.04 and 12.06.") (citing *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999)). Accordingly, Plaintiff's underdeveloped step three argument must be rejected.

(Doc. 12, pp. 10-12) (internal footnote omitted).

To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not enough. *Id.*

Plaintiff cites to three pages of medical evidence in support of this argument.

On June 14, 2016, Plaintiff was examined by Marek Kurowski, M.D. ("Dr. Kurowski"). During that examination, Dr. Kurowski made the following observations:

> Lumbar Spine: Inspection: no induration, ecchymosis, or swelling and normal alignment. Bony Palpation of the Lumbar Spine: no tenderness of the spinous process, the sacral promontory, the sacrum, or the coccyx and tenderness of the transverse process on the left at L5. Bony Palpation of the Right Hip: no tenderness of the iliac crest, the ASIS, the PSIS, the pubic tubercle, the iliac tubercle, the sciatic notch, the ischial tuberosity, the SI joint or the greater trochanter. Bony Palpation of the Left Hip: no tenderness of the iliac crest, the ASIS, the pubic tubercle, the iliac tubercle, the ischial tuberosity, or the greater trochanter and tenderness of the PSIS, the sciatic notch, and the SI joint.

Page 27 of 37

Soft Tissue Palpation on the Right: no tenderness of the supraspinous ligament, the paraspinal region, the iliolumbar region, the gluteus maximus, the gluteus medius, the sciatic nerve, the anterior abdominal muscles, the inguinal ligament, or the piriformis. Soft Tissue Palpation on the Left: no tenderness of the supraspinous ligament, the gluteus maximus, the anterior abdominal muscles, or the inguinal ligament and tenderness of the paraspinal region at L5 the iliolumbar region, the gluteus medius, the sciatic nerve and the piriformis. Active range of motion: flexion normal, extension normal, lateral flexion normal, rotation normal, and pain with motion.

Motor Strength: L1 Motor Strength on the Right: hip flexion iliopsoas 5/5. L1 Motor Strength on the Left: hip flexion iliopsoas 5/5. L2-L4 Motor Strength on the Right: knee extension quadriceps 5/5. L2-L4 Motor Strength on the Left: knee extension quadriceps 5/5. L5 Motor Strength on the Right: ankle dorsiflexion tibialis anterior 5/5 and great toe extension extensor hallucis longus 5/5. L5 Motor Strength on the Left: ankle dorsiflexion tibialis anterior 4/5 and great toe extension extensor hallucis longus 4/5. S1 Motor Strength on the Right: plantar flexion gastrocnemius 5/5. S1 Motor Strength on the Left: plantar flexion gastrocnemius 5/5.

Neurological System: Coordination: heel-to-shin normal. Babinski Reflex Right: plantar reflex absent. Babinski Reflex Left: plantar reflex absent. Special Tests: Valsalva's test negative. Ankle Reflex Right: normal (2). Ankle Reflex Left: normal (2). Knee Reflex Right: normal (2). Knee Reflex Left: normal (2). Sensation on the Right T12 normal, L1 normal, L2 normal, L3 normal, L4 normal, L5 normal, S1 normal, S2 normal, normal distal extremities. Sensation on the Left: T12 normal, L1 normal, L2 normal, L3 normal, L4 normal, S1 normal, S2 normal, normal distal extremities, and decreased sensation on the lateral leg and doraum of the foot (L5).  Special Tests on the Right: compression test negative, femoral nerve traction test negative, Patrick-Fabere test negative, supine straight leg raising test negative, seated straight leg raising test negative, and no clonus of the ankle/knee. Special Tests on the Left: supine straight leg raising test positive and seated straight leg raising test positive and compression test negative,

femoral nerve traction test negative, Patrick-Fabere test negative, and
no clonus of the ankle/knee.

(Admin. Tr. 1071-1072; Doc. 8-21, pp. 8-9).

On May 11, 2017, Plaintiff was examined by Certified Physicans Assistant

Jeremy Lazorka ("PA-C Lazorka"). During that examination, PA-C Lazorka made

the following observations:

> MUSCULOSKELETAL: normal muscle tone/bulk, no deformities,
> normal range of motion, normal spine alignment NEUROLOGICAL;
> muscles strength 5/5 in all major muscle groups, cranial nerves II-XII
> intact, rapid alternating movements intact, point-to-point movements
> intact, pain/temperature/light touch/vibration/discrimination intact,
> DTRs intact EXTREMITIES: no varicose veins, no edema, no
> abnormal movements, no tremor, no rigidity, normal alignment, normal
> gait.

(Admin. Tr. 1242; Doc. 8-23, p. 25).

On August 2, 2017, Plaintiff was examined by Dr. Kurowski. During that

examination, Dr. Kurowski made the following observations:

> Lumbar Spine: Inspection: no induration, ecchymosis, or swelling and
> normal alignment. Bony Palpation of the Lumbar Spine: no tenderness
> of the spinous process, the sacral promontory, the sacrum, or the coccyx
> and tenderness of the transverse process on the left at L5 (4). Bony
> Palpation of the Right Hip: no tenderness of the iliac crest, the ASIS,
> the pubic tubercle, the iliac tubercle, the sciatic notch, the ischial
> tuberosity, or the greater trochanter and tenderness of the PSIS and the
> SI Joint. Bony Palpation of the Left Hip: no tenderness of the iliac crest,
> the ASIS, the pubic tubercle, the iliac tubercle, or the ischial tuberosity
> and tenderness of the PSIS, the sciatic notch, the SI joint and the greater
> trochanter. Soft Tissue Palpation on the Right: no tenderness of the
> supraspinous ligament, the paraspinal region, the iliolumbar region, the

gluteus maximus, the gluteus medius, the sciatic nerve, the anterior abdominal muscles, the inguinal ligament, or the piriformis. Soft Tissue Palpation on the Left: no tenderness of the supraspinous ligament, the gluteus maximus, the anterior abdominal muscles, or the inguinal ligament and tenderness of the paraspinal region at L5 the iliolumbar region, the gluteus medius, the sciatic nerve and the piriformis; femoral nerve. Active range of motion: flexion normal, extension normal, lateral flexion normal, rotation normal, and pain with motion.

Motor Strength: L1 Motor Strength on the Right: hip flexion iliopsoas 5/5. L1 Motor Strength on the Left: hip flexion iliopsoas 5/5. L2-L4 Motor Strength on the Right: knee extension quadriceps 5/5. L2-L4 Motor Strength on the Left: knee extension quadriceps 5/5. L5 Motor Strength on the Right: ankle dorsiflexion tibialis anterior 5/5 and great toe extension extensor hallucis longus 5/5. L5 Motor Strength on the Left: ankle dorsiflexion tibialis anterior 4/5 and great toe extension extensor hallucis longus 4/5. S1 Motor Strength on the Right: plantar flexion gastrocnemius 5/5. S1 Motor Strength on the Left: plantar flexion gastrocnemius 5/5.

Neurological System: Coordination: heel-to-shin normal. Babinski Reflex Right: plantar reflex absent. Babinski Reflex Left: plantar reflex absent. Special Tests: Valsalva's test negative. Ankle Reflex Right: normal (2). Ankle Reflex Left: normal (2). Knee Reflex Right: normal (2). Knee Reflex Left: normal (2). Sensation on the Right: T12 normal, L1 normal, L2 normal, L3 normal, L4 normal, L5 normal, S1 normal, S2 normal and normal distal extremities. Sensation on the Left: decreased sensation on the knee and medial leg (L4) and on the lateral leg and doraum of the foot (L5) and T12 normal, L1 normal, L2 normal, L3 normal, S1 normal, S2 normal and normal distal extremities. Special Tests on the Right: compression test negative, femoral nerve traction test negative, Patrick-Fabere test negative, supine straight leg raising test negative, and no clonus of the ankle/knee and Patrick-Fabere test positive. Special Tests on the Left: femoral nerve traction test positive, Patrick-Fabere test positive, supine straight leg raising test positive and seated straight leg raising test positive and compression test negative, and no clonus of the ankle/knee.

(Admin. Tr. 1128; Doc. 8-21, p. 65).

Returning to Listing 1.04A, Plaintiff has shown and the ALJ found that Plaintiff has lumbar degenerative disc disease—a disorder of the spine. An MRI from May 2016 showed disc bulges at L3-L4, L4-L5, and L5-S1 with moderate to advanced central canal stenosis at L4-L5 and L5-S1. (Admin. Tr. 1142, Doc. 8-21, p. 79). Plaintiff was diagnosed with radiculopathy (a type of pain distributed to areas of the body via neurological routes)—present both before and after her surgery. (Admin. Tr. 1072; Doc. 8-21, p. 9) (pre-surgical diagnosis of left lumbar radiculopathy confirmed by EMG); (Admin. Tr. 1129; Doc. 8-21, p. 66) (prescribing physical therapy for post-surgical lumbar radiculopathy). Plaintiff was noted to have ankle weakness (strength 4/5) on the left side—typical of dysfunction of the L5 nerve root—both before and after the surgery. *See* David A. Morton III, *Medical Issues in Social Security Disability Volume I* 59 (2014). Plaintiff also exhibited a positive straight leg raise test (sitting and supine) before and after the surgery. However, the treatment notes cited do not establish the presence of any limitation of motion or sensory reflex loss, either before or after the surgery. Accordingly, I find that the ALJ's conclusion that Plaintiff's spinal impairment does not meet Listing 1.04 is supported by substantial evidence.

C.   WHETHER THE ALJ PROPERLY EVALUATED THE OPINION OF PLAINTIFF'S TREATING PSYCHOLOGIST

As discussed in Section IV. A. of this Report, the ALJ found that Plaintiff had the medically determinable impairments of anxiety and depression, but that these impairments were not severe. (Admin. Tr. 19; Doc. 8-2, p. 20).

On April 13, 2016, State agency psychological consultant Erin Urbanowicz, Psy.D. ("Dr. Urbanowicz") completed a psychiatric review technique assessment based on her review of the records available on that date. Dr. Urbanowicz assessed that Plaintiff had medically determinable affective disorders, and anxiety related disorders. (Admin. Tr. 89; Doc. 8-3, p. 7). She concluded that these disorders resulted in: a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. *Id.* Dr. Urbanowicz provided the following explanation in support of her opinion:

> Based on the evidence of record, the claimant's statement are found to be partially consistent.
>
> Claimant is alleging anxiety and reports treating with PCP. No formal mental health treatment history is noted. ADLs are not significantly limited by MH factors. Based on the medical evidence of record, the claimant's mental health impairment is non-severe.

(Admin. Tr. 90; Doc. 8-3, p. 8). This is the <u>only</u> medical opinion provided by any

source on this issue.

In her decision the ALJ gave "great" weight to Dr. Urbanowicz's opinion. In

support of that finding, she explained:

> Erin Urbanowicz, Psy.D., reviewed the record on April 13, 2016, and
> opined that the claimant had a mild restriction of activities of daily
> living; mild difficulties in maintaining social functioning; mild
> difficulties maintaining concentration, persistence, or pace; and no
> repeated episodes of decompensation (Exhibit 1A). The undersigned
> notes that language regarding mental impairments has changed since
> this opinion was offered. However, the opinion of this State agency
> reviewing psychologist is afforded great weight based on her
> familiarity with Social Security Rules and the fact that she supported
> her opinion with explanation. As detailed above in this finding, the
> undersigned finds the totality of this record is consistent with mild
> mental limitations.

(Admin. Tr. 20; Doc. 8-2, p. 21).

The Commissioner's regulations define medical opinions as "statements from

acceptable medical sources that reflect judgments about the nature and severity of

your impairment(s), including your symptoms, diagnosis and prognosis, what you

can still do despite impairment(s), and your physical or mental restrictions."  20

C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ is required to evaluate

every medical opinion received.  20 C.F.R. § 404.1527(b).

In deciding what weight to accord competing medical opinions, the ALJ is

guided by factors outlined in 20 C.F.R. § 404.1527(c). Under some circumstances,

the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

> Plaintiff argues:
>
> The Administrative Law Judge below placed "great weight" on the opinion of the state agency reviewing psychologist and a review dated April 13, 2016, to arrive at the conclusion that the Plaintiff had mild restrictions of activities of daily living, maintaining social functioning, maintaining concentration persistent [sic] and pace, and no repeated episodes of decompensation. See Exhibit 1A.
>
> Dr. Urbanowicz did not see the Plaintiff, did not treat the Plaintiff and did not have the opportunity to review Exhibits 15F, 16F, 17F, 18F, amd [sic] 19F consisting of 377 pages of medical records from 4 different providers.
>
> . . . .
>
> The Administrative Law Judge failed to articulate acceptable reasons for accepting the opinions of a State Agency reviewing psychologist over those of the Claimant's treating psychologist where the State Agency reviewing psychologist did not see the Claimant, did not treat the Claimant and did not have the opportunity to review 377 pages of medical records from four different providers in arriving at their decision.

(Doc. 11, pp. 11-14). The remainder of Plaintiff's argument is a long quote from a Report & Recommendation in the case of *Betar v. Colvin*, No. 4:15-CV-921 (M.D. Pa. Aug. 25, 2016), ECF No. 15. In *Betar*, the Report and Recommendation was adopted; no objections were filed. Order Adopting Report and Recommendation,

*Betar v. Colvin*, No. 4:15-CV-921 (M.D. Pa. Sept. 26, 2016), ECF No. 17. I construe this argument as an allegation that the ALJ improperly elevated the opinion of a non-examining source over opinions from a treating source, and that Plaintiff has cited *Betar* in support of that argument.

In the section of the *Betar* cited by Plaintiff in her brief, the Court was discussing the treating physician rule, and what it meant for a treating source's decision to be "not inconsistent with the other substantial evidence in the claimant's case record. In that case the Court concluded that the ALJ erred (1) when he concluded that the claimant's treating psychiatrist Dr. Calvert's opinion was not entitled to controlling weight under the treating source rule, and (2) when he gave more weight to the opinion of non-examining consultant Dr. Urbanowicz than was given to Dr. Calvert. However, this case is distinguishable from *Betar* on its facts. Unlike in *Betar*, where the claimant's treating psychologist provided a medical opinion, the record in this case does not include any medical opinion by any treating source. As noted by the Commissioner "Plaintiff does not name or identify any treating psychologist whose opinion the ALJ should have considered." (Doc. 12, p. 13). Further, I note that, under this Court's Local Rules, each contention in Plaintiff's brief "<u>must</u> be supported by specific reference to the portion of the record relied upon . . . ." L.R. 83.40.4(c). After reviewing this record, I am unable to locate any

opinion from a treating psychologist, and thus conclude that no opinion by any treating psychologist is in this record. Therefore, to the extent Plaintiff argues that remand is required because the ALJ did not accord controlling weight to an opinion that is not in this record, I am not persuaded.

V.     CONCLUSION

For the reasons stated in this Memorandum, Plaintiff's request for remand for a new administrative hearing  will be DENIED as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of ANDREW SAUL.

(3) The clerk of court will be directed to CLOSE this case.

(4) An appropriate Order shall issue.

Date: August 3, 2020                              BY THE COURT

                                                  *s/William I. Arbuckle*
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge